*Geo. H. Phelps and Henry W. Seney*, attorneys for plaintiff.

*John Poe*, attorney for defendant.

---

## CONTRACTS—AGENCY.

[Huron Circuit Court, 1898.]

King, Haynes and Parker, JJ.

### HATTIE C. BOEHM v. C. W. YANQUELL ET AL.

1. ACCEPTANCE OF DEED DOES NOT AMOUNT TO A RATIFICATION.

Where the evidence fails to show that one of the grantees to a deed failed to authorize the other party to act for her as her agent, or that she at any time or in any manner assented to the proposition which the grantor claims to have made for the purchase; the acceptance of the deed and the benefits therefrom by such grantee do not amount to a ratification of the contract which the grantor claims was made and which the grantees deny.

2. MUTUAL MISTAKE IN CONTRACT.

If the contract which one party honestly and reasonably supposes he is making is essentially different from that which the other party at the same time honestly and reasonably supposes it to be, then there is a mutual mistake, and no contract legally results, and the proper remedy is not to attempt to enforce the contract, but to have it set aside.

KING, J. (orally.)

An action was brought in the common pleas court by C. W. Yanquell to recover against Fred M. and Hattie C. Boehm the sum of $900, with interest from June 28, 1893, claimed to be due the plaintiff as the balance of the purchase price of certain real estate. The real estate in question was a mill and the land on which it is situated, and about 1878, this mill property was owned by one Jacob Boehm, since deceased. In 1878, he sold an undivided one-half of the mill property to Yanquell for a consideration of $4,050, of which consideration the purchaser paid $900 shortly after the purchase and the balance, $3,150, he did not pay; this was evidenced by five promissory notes of $630 each, and these notes were secured by mortgage upon the undivided half.

In March, 1893, Jacob Boehm died, and Yanquell, who then owned these notes, proposed to sell to the heirs of Jacob his undivided half of the mill, and it is claimed in the case that the proposition he made in that respect was accepted by the Boehms, and that later in June, 1893, the transfer was made. The consideration for the transfer is in dispute.

Yanquell claims that he proposed to convey his interest in the real estate for the amount which he had paid, $4,050, and that this sum was

Boehm v. Yanquell et al.

to be paid him by a surrender of the notes at their face value, $3,150, disregarding the interest accrued and a payment to him of $900 in cash. He made his proposition to Fred Boehm. He claims that it was agreed that Fred should convey this proposition to his sister Hattie, who lived six or seven miles away; that some time after he made the proposition Fred returned and signified that his sister would accept it; that nothing more was said about it until June 26, when the parties met in the office of Judge Stickney, at Norwalk, to prepare the papers, and a deed was there drawn up which recites in the consideration clause that "in consideration of the payment of $4,050, paid by Hattie C. Boehm to Fred M. Boehm, the receipt whereof is acknowledged, the grantor does convey," etc.; that the deed so made was executed by him and his wife and accepted and received by the defendants; that they turned over to him the notes in question but did not pay him the $900, and he brings this action to recover that sum.

There are several objections to the charge of the court and to the refusal to give certain requests, and the claim is urged that the verdict and judgment is not supported by sufficient evidence. We do not think it necessary to review the evidence.

The plaintiff below sought to hold Hattie Boehm upon the claim that Fred Boehm acted in the transaction as her agent and the case was submitted to the jury upon that theory, and the jury instructed that they must find from the evidence that she had authorized her brother Fred, to act for her in the transaction. The plaintiff did not claim to have had any conference or conversation with Hattie or in her presence until the parties met to draw up the deed. On that occasion the plaintiff claims that Mr. Stickney prepared a deed, that he read or started to read the deed, and said that he had left the consideration blank and inquired what sum should be put in, that plaintiff responded and said that he should put in the full amount, and thereupon he wrote in $4,050 as the consideration, and the deed was then signed. The plaintiff does not say that Hattie said anything about it except by her silence to consent that the consideration clause should be filled out as suggested by the plaintiff. It is also claimed in argument that Hattie received the deed, had it put upon record and that afterwards, perhaps after this action was commenced, she and her brother sold the property and received the proceeds of the sale, and that from this a ratification may be presumed.

We think the record is entirely barren of evidence tending to show that Hattie Boehm either authorized her brother to act for her as her agent or that she at any time or in any manner assented to the proposition which the plaintiff claims he made for the purchase of this property, and we think that the acceptance of the deed and the benefits therefrom by Hattie Boehm do not amount to a ratification of the contract which the plaintiff claims was made and which the defendants deny, and that because of this, the verdict and judgment is unsupported by evidence against Hattie Boehm. We also think in that condition of the record that the court should have given the seventh request made by the defendants, which was refused, to-wit: "There is no evidence in this case tending to prove that Fred M. Boehm had any authority as the agent of Hattie Boehm, to make such an agreement with the plaintiff as is sued upon in this action." This is enough to say about the case as far as Hattie Boehm is concerned. So far as Fred is concerned, some further observation should be made.

I have referred to the claim the plaintiff makes as to the transaction in Judge Stickney's office. On the part of Fred he testifies in his own behalf that the proposition made by the plaintiff was that he would convey his interest in the property if the parties interested would surrender to him the five notes which they held as a part of the assets of the estate of Jacob Boehm, deceased. Fred says he carried that proposition at the plaintiff's request to his sister and to their mother, who was likewise interested in the estate, and who are the only ones interested, and they agreed to the surrender of the notes, and that the plaintiff's interest in the mill should be conveyed to Hattie and Fred ; that he notified the plaintiff of their acceptance and they met on the day above named at Judge Stickney's office. Fred, Hattie, and their mother all testify that Judge Stickney in referring to the consideration clause said he had not filled it out, but that any sum would answer, a dollar or a thousand dollars or the amount in the old deed which he had before him and from which he had procured the description he inserted in the new deed; that no one made any reply and Judge Stickney again inquired if they had any preference, saying that it made no difference what was inserted in that clause, and that the plaintiff then spoke up and said that he might as well put in the amount in the old deed, and that this accounts for writing in the sum of $4,050.

The testimony of Judge Stickney taken at a former trial was offered on this trial. He testifies that he was consulted by both Fred Boehm and Yanquell some days before June 26, about drawing up these papers, and that Yanquell had furnished him with his deed from Jacob Boehm and he had written a new deed some days before the 26th; that he understood from both parties that the Boehm family was to cancel the notes and mortgage and deliver them up to Yanquell as the consideration for the property; that he wrote all of the deed except the consideration clause; that he began to read it when the parties were there upon the 26th, and when he reached the blank he said "here is a space to be filled in with the amount, but nobody said anything. I said how musch shall I put in ? Nobody said anything, and I then remarked, you can put in one dollar, as the only point is to re-convey the title—you can put in one dollar or twenty dollars or a thousand dollars, or if you choose, you can put in the old price stated in the deed, which would be $4,050; but none said anything about it for a moment. Finally Mr. Yanquell speaks up to me and says, well, it will look better, I guess, and you had better put in the last sum—$4,050. I then inserted the amount and that is the way that amount became inserted."

He further testifies that after the papers were executed and delivered the parties all left the office but soon after Mr. Yanquell returned, closed the door behind him and said to him, "Stickney, I want to ask you a question; I am satisfied with all this business, but I want to ask you a question." I says, "What is it, Mr. Yanquell?" He says, "Can't I collect this $900 off from the estate of Boehm, now?" Says I, "Under the circumstances you can't collect it, for you have simply gone, under the transaction, and paid the debt that you owed to Mr. Boehm by cancelling the claim you had; but if you have made a contract with Fred, or with anybody that is responsible—have got a responsible contract—you can enforce that contract; I don't know whether you have or not," but under the other circumstances, I said to him, "you can't collect the $900." Mr. Stickney testifies to some other conversation with Yanquell then, and the parties separated. On the way home Fred Boehm

Boehm v. Yanquell et al.

went on the train with Yanquell and Yanquell made some inquiry as to when Fred would pay the $900. There is a dispute about what took place there. It is conceded, however, that Fred said nothing indicating that he either understood what Yanquell wanted or whether he was going to pay it. The same afternoon at the mill Yanquell made his claim more specific and Fred then told him that he didn't owe him any $900.00, and was not going to pay anything. There is other evidence in the record but it is hardly material enough to justify reciting.

We have come to the conclusion that the clear weight of this evidence is with the defendant Fred Boehm as to the contract for the sale of this land. But, if the testimony of Yanquell were believed and the testimony of Fred Boehm as to the proposition originally accepted, then there was a mistake, the minds of the parties did not meet in a valid contract, and having this idea in view, defendants asked the court to charge the jury as follows:

"9.—If the contract which one party honestly and reasonably supposes he is making is essentially different from that which the other party at the same time honestly and reasonably supposes it to be, then there is a mutual mistake, and no contract legally results, and the proper remedy is not to attempt to enforce the contract, but to have it set aside, and if you find such mistake of the parties to have happened in this case, your verdict must be for the defendants."

The court refused to give this and to his refusal the defendants excepted. We think in view of the evidence and the claim made by the defendants, that they were entitled to have this request given.

In view of what we have said with reference to the case of Hattie Boehm, it is unnecessary to refer to the charge of the court, considerable of which is excepted to, but is disposed of by our holding that the court should have instructed the jury directly to return a verdict in her favor. We think that the verdict is not supported by sufficient evidence as to Fred Boehm as well as Hattie and for the refusal of the court to give the 7th and 9th requests not given, and for error in overruling the motion for a new trial on the ground that the verdict was not supported by sufficient evidence, we reverse the judgment and remand the cause for a new trial.

A question was urged upon the form of the verdict. We are satisfied the court below correctly disposed of that question, that the verdict as rendered by the jury contained sufficient to enable the court to ascertain its meaning and effect and that a judgment was properly rendered against both defendants so far as the verdict itself is concerned.

*Vickery Brothers*, attorneys for Yanquell et al.

*Bentley & Stewart*, and *Stewart & Rowley*, attorneys for Boehm.